[No. 3182.   Decided March 14, 1899.]

OREGON MORTGAGE COMPANY, LIMITED, *Appellant*, v. L. W. ESTES *et ux.*, *Respondents*.

FORECLOSURE OF MORTGAGE—DEFENSES—FORGERY—EVIDENCE.

A finding by a referee that a mortgage in suit was not a forgery should be upheld, although the alleged mortgagors dispute its genuineness, claiming that they never executed a mortgage to the plaintiff as mortgagee therein, but that a month prior they had executed a mortgage for a like amount to another party, when it appears that the signatures of the mortgagors to the instrument in question are genuine, that the notary before whom it was executed and a witness to the signatures testify that they witnessed its execution, that the instrument which defendants claim to have executed has never been recorded or heard of in any way, that defendants took out a policy of insurance on the premises, making it payable to the plaintiff as mortgagee, and deposited the policy with its agent as collateral security on the mortgage in suit, and that in another action, not connected with this case, but tried about a year and a half after the alleged execution of the mortgage in suit, defendants testified to the existence of a mort-

gage in favor of plaintiff herein, for an amount corresponding to that in the mortgage now sued on, although defendant now claims that he at no time executed a mortgage in favor of plaintiff.

Appeal from Superior Court, Walla Walla County— HON. MELVIN M. GODMAN, Judge. Reversed.

*B. L. and J. L. Sharpstein,* for appellant.

*Miles Poindexter, George T. Thompson,* and *Oscar Cain,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This was an action to foreclose a mortgage given to secure a note for the principal sum of $6,500 and accompanying interest notes. The complaint was the usual complaint in foreclosure, and the answer a general denial. Upon the joining of the issues the action was referred to Hon. W. T. Dovell, a lawyer of Walla Walla, to hear the evidence and find the facts and conclusions of law. Upon the conclusion of the evidence he filed a report finding the issues in favor of the plaintiff. Exceptions were made to the report, and upon an order of the court the action was re-referred, to allow either party to offer additional evidence. The referee's report was in favor of the plaintiff. The court afterwards set aside this report, and found for the defendants, and ordered the action dismissed. The contention in this case is that the mortgage sued upon is a forgery, the defendants swearing that they never executed the same. The referee found that the mortgage had been executed, and that the signatures were genuine. The court found that the signatures were not genuine, and that the mortgage was forged. An appeal has been taken, and the case comes here for the judgment of this court upon the testimony reported.

A brief and pertinent history of the transaction out of which this action grows is as follows: One E. B. Goodrich

and one George L. Fitzhugh were owners of the lot and brick building situated in Walla Walla which form the subject of this foreclosure suit. Fitzhugh desired to trade his brick block for a farm, and the defendant L. W. Estes desired to trade his farm for the brick block. The price agreed upon for the farm was $18,000, and the price of the brick block was $23,500. Estes was to deed his farm to Fitzhugh, and pay him the balance up to $23,500 in notes. Fitzhugh was to assume the payment of a mortgage which was on the farm, and to take a mortgage back on the town property for $6,500. A written contract, which is sent up in the record, and marked "Plaintiff's Exhibit 15," includes the conditions and agreements growing out of the trade. Goodrich was in the East at the time the trade was made, and Fitzhugh represented him in the transaction. The mortgage for $6,500 sought to be foreclosed is given in favor of the Northern Counties Investment Trust, Limited, a corporation, and was, before the action, duly assigned to the appellant, the Oregon Mortgage Company, Limited. It is admitted by the defendants that they gave a mortgage on the 8th day of February, at the time that the deed was given by Fitzhugh to them, and at the time that the contract or article of agreement was entered into on the land described for the amount of $6,500, but that said mortgage was given to Fitzhugh, and not to the Northern Counties Investment Trust, Limited. No such mortgage as the one admitted to have been executed by the defendants was recorded at that time or since, or has ever been seen or heard of since that time; but the mortgage in question, which was executed on March 7, 1893, about a month after the agreement was executed, was recorded, together with the deeds which completed the transaction. This case has involved the necessity of a very painstaking investigation on the part of the court. Almost innumerable exhibits have been sent up in rather a disorderly man-

ner in the record, and the testimony is exceedingly voluminous, but from a careful investigation of all the testimony, including the exhibits in the case, we are satisfied that the report of the referee should be sustained, and the judgment of the lower court reversed.

It is always an unpleasant and difficult duty to decide between witnesses whose testimony is absolutely conflicting. In this case, however, while it would be impossible, as well as unprofitable, to review the testimony at length, there are circumstances surrounding the case which lead us to the conclusion above announced. In the first place, so far as we are able to judge, the signatures of the defendants to the mortgage, which is an exhibit in the case, are genuine; yet, as the members of this court do not assume to be experts in this line, we do not consider this a controlling circumstance. It is true that the genuineness of these signatures is denied by both of the defendants. On the other hand, the execution and acknowledgment of this mortgage is positively sworn to by the witness Phipps, who was the notary who made the acknowledgment to the mortgage, while the witness Fitzhugh testifies positively to the signing of the instrument by W. L. Estes. It is also true that an attempt was made to impeach the testimony of these two witnesses, and it is a fact that they do not seem to enjoy an enviable reputation for truth and veracity in the neighborhood where this suit was tried; but their testimony bears upon its face in this case the impress of truth. They are disinterested witnesses, so far as this case is concerned. In fact, it would be rather against the interest of Fitzhugh than otherwise to testify as he did that he had not received a mortgage from Estes and wife, if such a mortgage really existed, while the interest of the defendants must be taken into consideration also. Again, the agreement which it is conceded was entered into provides for the giving of this mortgage either to Fitzhugh or to

any one of the loaning companies represented by him, so that it was evident that it was understood at the time the contract was made that Fitzhugh was an agent of some loaning companies, and that the mortgage was liable to be made to some one of said companies. We think that the fact that the mortgage was not executed until a month after the contract was entered into does not weigh against the genuineness of the mortgage sued upon when it appears without contradiction that Goodrich, who was part owner of the block, was in the East, and that the trade could not be finally consummated until he returned, or action was taken by him in the premises. Again, Mr. Reidford, who was the agent of the company to whom the mortgage was given, testifies that in the summer of 1894 Estes went to him to pay the interest on a $6,500 mortgage, taking with him one Charles Buffum as a witness to the tender. Reidford desired him to make the payment on a certain other mortgage of $12,500, which Estes refused to do. Reidford was known by Estes to be the agent of the mortgage company, and was not known to have anything to do with Fitzhugh's private business. Buffum and Jackson testify to the same conversation. It also appears that in a former action, not connected in any way with this case, Estes testified that he had a mortgage of $6,500 to some loan company. The following excerpt from his testimony is pertinent:

"Q. You had a mortgage already on your place of $6,500 to Livingstone or some Scotch company?. A. Some loan company. Q. And you owed $800 to the Walla Walla Building and Loan Association? A. $700. Q. And there is some interest on it? A. No interest at all. Q. These mortgages were on the same property covered by the same mortgage you gave Livingstone, were they not? A. Yes, sir."

Livingstone, as we understand, is the general agent of the appellant company in this case; so that it would seem

that Estes did understand that the mortgage which he had
given was given to a loan company, and not to an individ-
ual.   This testimony of Estes was given in the fall of 1894,
about a year and a half after the alleged execution of the
mortgage.   It again appears that an insurance policy was
issued to Estes on the property in question, and that the
loss was made payable to the Northern Counties Invest-
ment Trust, Limited, described in the policy as follows:
"Mortgagee or beneficiary or assigns as herein provided."
This seems inconsistent with the contention of Estes that
he had not given a mortgage on the property insured to the
Investment Trust, Limited.   He also deposited with Reid-
ford, the agent of the investment company, as collateral
security for the $6,500 mortgage, the policy of the insur-
ance company, and demanded a receipt to that effect.   Mr.
Reidford's testimony in that regard is as follows, the sub-
ject of the insurance policy being under consideration:

"Examine plaintiff's Exhibit 6, and state if you ever
saw that paper before.   A. Yes, I saw it before.   Q. Did
you ever have it in your possession?   A. Yes, sir.   Q. How
did you come to have it in your possession?   A. It was
handed to me by Mr. Estes.   Q. For what purpose did he
state he gave it to you?   A. He gave it to me as collateral
to the mortgage of $6,500.   Q. What mortgage of $6,500?
A. The one in favor of the Northern Counties Investment
Company.   Q. State whether or not that is the mortgage
in litigation in this case.   A. It is the mortgage in this
case.   Q. What, if anything, did you agree with him you
would do with it?   A. At his request I accepted the policy
as collateral to this loan.   He refused to give it to me on
any other condition.   He demanded a receipt, and I gave
him a receipt, stating in the receipt the agreement we had
at the time of delivery."

The witness produced a copy of the receipt, which is as
follows:

"Walla Walla, Washington, 18 June, 1894.   L. W. Es-
tes, Esq., City—Dear Sir:   I have received you[r] policy

No. 1,968 in the Hamburg-Magdeburg Insurance Company for $3,500, covering your brick building on Main street, to be held by the Northern Counties Investment Trust as collateral security for their loan of $6,500 on same. (Signed) Yours, truly, R. R. Reidford, Agent of Said Company."

This would seem to be conclusive that Estes understood that the mortgage which he made was the mortgage as described in the receipt. It seems to us that there is no doubt but that the copy exhibited by the witness Reidford was a true copy of the receipt furnished. Again, the officers of the bank, who transacted all the business for Estes and for the companies of which Fitzhugh was an agent, testified that there were no records of any notes given by Estes to Fitzhugh, and that there would have been a record of such notes if the transactions had been made in the bank as testified to. It is the contention of the defendants that at the time of the execution of the contract and deed the mortgage to Fitzhugh was executed; that the notary who took the acknowledgment to the mortgage was not Leon Phipps, but was one E. B. Westcott; and that it was witnessed by Westcott and one Emily Armstrong, afterwards Mrs. Tillsey. Mrs. Tillsey, in her testimony on the part of the defense, testifies that on the 8th day of February, 1893, she was at the residence of Mr. and Mrs. Estes, and was requested to witness their signatures to what she thinks was a deed and mortgage. In her testimony, however, on cross-examination, she testified that she only witnessed two papers at that time; that one was an instrument containing but one sheet of paper; that the other one was a larger instrument; and that no other instruments were witnessed by her. The contract and the deed were then presented to her, and she not only testified that the witness' signatures to those instruments were her signatures, but that the papers themselves looked like the papers which

she had witnessed.  She did not undertake to testify who the notary was who took the acknowledgment.  If her testimony was true, then, to the effect that she had only witnessed two instruments, and those two instruments were the instruments which were exhibited to her by the attorneys for plaintiff, it must be that she was mistaken in her statement that one of them was a mortgage, and that a mortgage was not witnessed by her at all on that occasion; and there is no claim that one was witnessed by her at any other time.  If she was mistaken, then Estes must also have been mistaken in regard to a mortgage having been executed that night, for he testifies that Miss Armstrong witnessed the signatures of himself and his wife, and states in detail the circumstance that makes him remember it, viz. that when Miss Armstrong signed the instrument as a witness she playfully demanded two dollars as a recompense for her signature.  This same instance is related by Miss Armstrong in her testimony, which shows pretty conclusively that no mortgage was executed that night by Estes and wife to Fitzhugh or to any one else; but we think the testimony as a whole shows that the mortgage was executed further on, when all the transaction was completed.  After the testimony of Miss Armstrong was concluded, she was again introduced, and an attempt was made to have her explain the testimony offered by her before.  The attempt was not successful, although she stated that since she had testified before she had been in consultation with the attorneys for the defense.  The contract itself, it seems to us, shows conclusively that the mortgage was not made at the time the contract was made, but that it was to be made at some future time.  A great deal of testimony was introduced in this case which seems to us to be entirely irrelevant, and, while it is true that there are some slight instances leaning towards the theory that a mortgage had been given to Fitzhugh instead of to the investment com-

pany, they do not weigh as a whole with the many circumstances in the case pointing forcibly to the fact that the mortgage in question was executed by the defendants, and that no other or different mortgage was executed by them to Fitzhugh individually. The circumstances which we have mentioned, viz., the fact that the defendants were under contract to make the mortgage; the fact that the insurance policy designated the trust company as beneficiary; that the insurance policy was deposited as collateral for the mortgage of the trust company; that the receipt especially designated the trust company as the mortgagee, for whose interest the policy was deposited; the fact that the mortgage in suit was on record for years, and had never been questioned until the answer was filed in this court; that no other mortgage was placed on record; that no interest had been paid or tendered on the alleged mortgage to Fitzhugh; the fact that the subscribing witness, as we have indicated, testified that she had subscribed to but two instruments, and that those instruments were exhibited to her, and that neither one of them was a mortgage, coupled with the fact that the signatures to the mortgage seem to be the signatures of those signing other instruments sent up in the record, and conceded to be genuinely signed,—all go to establish at least a very strong preponderance of testimony in favor of the genuineness of the mortgage sued upon. Add to this the fact that the referee who reported in favor of the genuineness of the mortgage had the advantage of having the witnesses before him, of seeing their demeanor, of noticing their exhibition of reluctance to testify or of eagerness to testify, and of observing the many indications of bias, or prejudice, or unfairness exhibited by witnesses in a hotly-contested case,—indications which cannot be transcribed to paper, but which are potent aids in correctly interpreting testimony,—and we feel amply justified in sustaining the report of the referee, and revers-

ing the judgment of the court, and remitting the cause, with instructions to the lower court to enter a decree in conformity with the report of the referee. It is so ordered.

GORDON, C. J. and ANDERS and REAVIS, JJ., concur.